Cecile C. GAGNE et al.

v.

INHABITANTS OF the CITY OF LEWIS-
TON, Zoning Board of Appeals, and The
Lewiston Crushed Stone Co., Inc.

Supreme Judicial Court of Maine.

Oct. 5, 1971.

Rocheleau & Fournier, by William Roch-
eleau, Jr., and Paul C. Fournier, Lewiston,
for plaintiffs.

Philip Isaacson, John C. Orestis, Mar-
shall, Raymond & Beliveau, by Laurier T.
Raymond, Jr., Thomas E. Delahanty II,
Lewiston, for defendants.

Before DUFRESNE, C. J., and WEB-
BER, WEATHERBEE, POMEROY,
WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The Lewiston Crushed Stone Co., Inc. (Company) conducts its operation on a lot of land in the City of Lewiston which is partly in an Industrial Zone and partly in a Residential A Zone. The Plaintiffs are abutting residence owners. At the present time the Company maintains a garage which is largely within the Industrial Zone. A small part of the garage is within the Residential A Zone as is the yard which is principally used by the Company for moving and storing large trucks and other heavy construction equipment. The Company's present use of its property in the Residential A Zone is a lawful non-conforming use, it having antedated the adoption of the ordinance.

That part of the present garage which is in the Residential A Zone is situated about 20′ from the Plaintiffs' lot line at its nearest point. The Company proposes to demolish this present garage and to erect a new and larger one on the same lot. The new building, however, would stand at the Plaintiffs' property lines and all but a small part of it would be in the Residential A Zone.

Section 10.b of the Zoning Ordinance of the City of Lewiston reads:

"A building of non-conforming use may be *enlarged* or *altered* or *additional buildings may be erected* on the same or an adjacent parcel of land in the same single or joint ownership of record at the time it is placed in a zone for an extension of such use, *provided the Board of Appeals shall rule that such additional or alteration is not substantially more detrimental or injurious to the neighborhood.*" (Emphasis added).

The Company petitioned to erect the new garage to replace the old one and the Zoning Board of Appeals held a public hearing on the petition on September 18, 1969. The Agreed Statement of Fact reveals that a number of persons appeared and there were expressions of opinion on each side of the issue. It recites that "arguments were advanced" by proponents that the proposed building would aesthetically benefit the area and would result in removal of the pattern of heavy traffic which currently passes between the present building and the Plaintiffs' lot lines. The Company's petition was based upon the authority given to the Zoning Board of Appeals by Section 10.b. On September 18, 1969, following the hearing, the Board voted as follows:

"To issue a permit to Lewiston Crushed Stone Co., Inc., South Avenue, to build a one-story 'L' shaped concrete garage for repairs; one section measuring seventy-two (72) feet by one hundred fifty (150) feet, the other section measuring twenty-five (25) feet by fifty (50) feet, to replace present garage, as plan submitted. This location is in residential A and industrial zone."

It will be noted that this vote included no finding that the proposed change would be substantially more detrimental or injurious to the neighborhood.

On October 15, 1969 the Plaintiffs commenced the present action and service was then made upon the Defendants.

On November 20, 1969 the Board met again and voted as follows:

"That after reviewing the minutes of the previous meetings, it was noted that on September 18, 1969, in granting the variance for Lewiston Crushed Stone to build a garage, the reason for granting the variance was not reflected in the minutes by error. Reason is as follows (sect. 10, Non-conforming Uses), ZBA has ruled that such change or extended use is not substantially more detrimental or injurious to the neighborhood. (Motion by Boisvert, seconded by Marcous 4–0) Paul Dube abstained from voting —he was not at the meeting of Sept. 18th."

The Justice in the Superior Court, after examining the exhibits and an Agreed

Statement of Facts, ruled that "the replacement of an old garage with a new one does not come within the words used in the provision [i. e., of Section 10.b] namely, 'enlarged or altered or additional buildings'" and reversed the decision of the Board. The matter comes to us on the Company's appeal. The issue before us is whether or not the applicable law was applied to the agreed facts.

Although the Plaintiffs presented several claims of invalidity in the action of the Board in granting the permit, the Justice dealt with only one. He ruled that the proposed replacement of the old garage by a new one does not come within the provision of sec. 10.b that a building of nonconforming use may be "enlarged or altered or additional buildings may be erected".

In our examination of the Justice's construction of the language of the ordinance, we must bear in mind that the use being made of that part of the present building which lies in the Residential A Zone— where industrial uses have been declared to be against the public interest—is tolerated only because, by statute, the zoning ordinance does not apply to "structures and uses existing at the time it [the ordinance] is enacted".[1] We have declared that public policy demands the strict construction of provisions in a zoning ordinance which concern the continuation of a nonconforming use.

> "The spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses, and to secure their gradual elimination. Accordingly, provisions of a zoning regulation for the continuation of such uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed. The right to continue a nonconforming use is not a per-

petual easement to make a use of one's property detrimental to his neighbors and forbidden to them, and nonconforming uses will not be permitted to multiply when they are harmful or improper * * * Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning *is to abolish nonconforming uses* as speedily as justice will permit." (Emphasis added). Inhabitants of the Town of Windham v. Sprague, Me., 219 A.2d 548 at 552–553 (1966).

We have recently reaffirmed this policy in Frost v. Lucey, Me., 231 A.2d 441 (1967) and in Lovely v. Zoning Board of Appeals of the City of Presque Isle, Me., 259 A.2d 666 (1969). We added in *Frost* the reminder that this policy must be carried out within the legislative standards and the municipal regulations. We find that this policy is accepted by at least the majority of the jurisdictions dealing with this question. The Connecticut Court, in construing the language of an ordinance prohibiting the changing of a nonconforming use except to a conforming use or to another nonconforming use no more objectionable in character, said:

> "The obvious purpose of this provision is to contain a nonconforming use within the limits of the use in existence when the regulations were adopted so that, eventually, the use may be brought into conformity with the regulations for the district in which the premises are located." Town of Guilford v. Landon, 146 Conn. 178, 148 A.2d 551 at 553 (1959).

The particular statutory language chosen to limit the granting of an exception under 10.b is especially important in view of the limited authority given by the enabling act to the Board of Appeals—

---

1. 30 M.R.S.A. § 4953 §§ 5. Application. A zoning ordinance does not apply to structures and uses existing at the time it is enacted, but applies to new structures and uses, and changes in structures and uses made afterward.

    A. The changes in structure and use to which a zoning ordinance applies may be defined in the ordinance.

"It may permit an exception to an ordinance only when the terms of the exception have been specifically set forth by the municipality." 30 M.R.S.A. § 4954, § 2, A.

■ Viewed in their ordinary meanings the words "enlarged" and "altered" do not appear to have been intended to described the act of demolition of an existing building and the erection of an entirely new one. The Massachusetts Court arrived at a similar conclusion when it held that a permit to demolish existing structures and to erect in their place a new, larger building dedicated to the same nonconforming use was not authorized by an ordinance which allowed the Board to permit such premises to be "altered or extended for that use". David v. Board of Appeals of Reading, 333 Mass. 657, 132 N.E. 2d 386 (1956).

While we are impressed by the reasoning of the Massachusetts Court, we realize the Lewiston ordinance also authorizes the Board to permit the erection of "additional buildings" as well as the alteration and enlargement of the old ones. Does the reference to "additional buildings", along with "enlarged or altered", indicate an intention to permit replacement of an existing building with a new one? Webster's International Dictionary, Second Edition, defines "addition" as " * * * increase; augmentation; accession; * * *". The use of these words does not suggest an intention to allow a replacement.

While it may seem unusual that the legislative body of the city intended to empower the Board to authorize additional buildings but not replacements of old buildings, this is the plain effect of the language used. The result does not appear unreasonable when we reflect that a policy of the law is, as the North Carolina Court said, the gradual elimination of nonconforming uses. Application of O'Neal, 243 N.C. 714, 92 S.E.2d 189 (1956). If the intention of the ordinance was to permit perpetuation of the nonconforming use by allowing replacement of the offensive buildings as their usefulness ceases, words could have been chosen which would make this intention clear. We note also that the municipal legislative body did not choose to provide, specifically, at least, for replacements for nonconforming structures which have been destroyed by fire or other calamity.

We find no convincing authority contrary to the construction of the Presiding Justice. In O'Neal, the ordinance provided that a nonconforming use may not be "enlarged or extended" and that such a building if destroyed by a calamity may be "reconstructed and used as before". The Court indicated its future approval (after proper submission of plans showing use would be substantially the same) of demolition of a frame nursing home which officially had been declared to be unsafe and its replacement by a comparable brick building. There, however, the ordinance provided that existing nonconforming use "may be continued, but not enlarged or extended * * *". It neither expressly forbade nor sanctioned new construction—except that it permitted a reconstruction in the event of destruction of a nonconforming building by a calamity.

It appears to us—as it apparently did to the Presiding Justice—that the language of § 10.b reflects the prevailing compromise between community and private interests and is intended to permit the owner a limited latitude in keeping his property efficient for the nonconforming use but a latitude which will not unduly postpone the day when circumstances will eventually make the premises unsuitable for the offensive purpose.

The abutting owners presented the Presiding Justice with three other arguments against the validity of the Board's action. Although these were not reached by the Justice, two of them should have additional comment by us.

■ First, the Site Plans admitted in evidence demonstrate that the east side of the proposed new building would be situated at the very edge of the Company's lot

line next to the Plaintiffs' lots and would be in violation of section 6.b of the Ordinance which requires side yards of at least 10′ from the lot line. While 30 M.R.S.A. § 4954(2) (A) empowers a board of appeals to grant a variance from the terms of an ordinance "where necessary to avoid undue hardship, provided there is no substantial departure from the intent of the ordinance", this is a dispensation to which a petitioner is entitled under zoning law only upon the finding of the existence of certain conditions detailed in the ordinance, as distinguished from an exception which allows a use forbidden by law. 58 Am. Jur., Zoning, § 196; 101 C.J.S. Zoning §§ 268-274; Gregory, Administration of Zoning in Maine, Bulletin 660, University of Maine, 1968. The Board could not validly grant a variance as to setback requirements on the basis of an application for an exception as to a nonconforming use. Wrona v. Board of Appeals of Pittsfield, 338 Mass. 87, 153 N.E.2d 631 (1958).

■ Second, the first vote of the Board included no "ruling" that the requested replacement would not be substantially more detrimental or injurious to the neighborhood. The Board was without authority to grant the Company an exception and to issue a permit under section 10.b unless it ruled that the change is not substantially more detrimental or injurious to the neighborhood. We construe this condition to require a finding of fact by the Board and the record of the September 18 hearing shows no such ruling or finding. Can the absence of this jurisdictional finding be cured by another vote after the Plaintiffs have begun their appeal to the Superior Court by commencing a civil action as provided by M.R.C.P., Rule 80B by serving complaints and summonses on the Defendant? We think not.

30 M.R.S.A. § 4954(2) authorizes an appeal from the decision of the Board to the Superior Court. The Plaintiffs have utilized the appeal process provided by M.R. C.P., Rule 80B and their complaint was served on the Defendants and was filed before the second vote of the Board.

The authority of an administrative agency to correct errors in its decisions and to reconsider or modify its actions has frequently been discussed and various factors are considered determinative of the existence or absence of such power. 2 Am.Jur. 2d, Administrative Law, § 523; 73 A.L.R. 2d, 952, 957. We find little precedent as to the precise issue before us—that is, the effect of the filing of an appeal before the vote was taken to correct the record of the first meeting.

■ However, we consider the better reasoned concept of the nature of an appeal to be that the filing of an appeal removes the cause from the administrative tribunal to the Superior Court. We hold that the appeal terminates the authority of the tribunal to modify its decisions unless the court remands the matter to the tribunal for its further action, thereby reviving its authority. This view is analogous to that which this Court has followed in criminal appeals (State v. Houlehan, 109 Me. 281, 83 A. 1106 (1912)) and insures the stability of the decision for judicial review. Smith v. Wald Transfer and Storage Co., 97 S.W.2d 991 (Tex.Civ.App.) 1936; 42 Am.Jur., Public Administrative Law, § 174; 1942 Wisconsin Law Review, The Doctrine of Res Judicata in Administrative Law, 5.

"Administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative authorities. * * * When the jurisdiction of the administrative body has terminated, there is no longer any power to reconsider or change the determination. * * *" Atlantic Greyhound Corp. v. Public Service Comm., 132 W.Va. 650, 54 S.E. 2d 169 at 175 (1949).

Appeal denied.

All the Justices concurring.