Cecile C. GAGNE and Victoria A. Bouffard

v.

**LEWISTON CRUSHED STONE COMPANY, INC., et al.**

Supreme Judicial Court of Maine.

Dec. 10, 1976.

Rocheleau & Fournier, P.A. by Paul C. Fournier, Lewiston, for plaintiffs.

Isaacson & Isaacson by Robert S. Hark, Lewiston, for Lewiston Crushed Stone.

Paul R. Dionne, Lewiston, for the City of Lewiston and defendant Buteau.

Before WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

This case, a sequel to our decision in *Gagne v. Inhabitants of City of Lewiston,* Me., 281 A.2d 579 (1971), requires that, in light of our intervening decision in *Keating v. Zoning Board of Appeals of the City of Saco,* Me., 325 A.2d 521 (1974), we further develop principles governing the manner and scope of the judicial review of the decisions of administrative officials concerned with zoning.

Defendant Lewiston Crushed Stone Company, Inc. (defendant company) has appealed from a summary judgment in favor of plaintiffs Cecile C. Gagne and Victoria A. Bouffard. The judgment entered in the Superior Court (Androscoggin County) (1) revoked a building permit which was issued, on November 20, 1972, to defendant company by the Lewiston building inspector and (2) required defendant company to remove a portion of the building constructed pursuant to said permit.

Plaintiffs have filed a cross-appeal asserting that the remedy given them was too narrow because removal of the entire

* WEATHERBEE, J., sat at argument but died before the opinion was adopted.

building, rather than only part of it, should have been ordered.

We sustain the appeal of defendant company. We thus do not reach the cross-appeal of plaintiffs and dismiss it.

### 1.

On July 26, 1973 plaintiffs instituted a civil action in the Superior Court (Androscoggin County) invoking that Court's jurisdiction in equity. Sued as defendants were the defendant company, the Inhabitants of the City of Lewiston and the Lewiston building inspector, Charles Buteau. As ultimately amended,[1] the complaint of plaintiffs alleged that on November 20, 1972 the building inspector had issued defendant company a building permit pursuant to which, in 1973, construction was commenced. Plaintiffs claimed that these acts violated the Lewiston Zoning Ordinance, as in effect when the building permit was issued,[2] and sought declaratory and injunctive relief, including revocation of the allegedly illegal building permit and removal of any building constructed under it.

Defendant company answered by admitting issuance of the permit, and construction pursuant to it, but denied violation of the ordinance. Defendant company also raised several affirmative defenses, one of which we find basically dispositive of this appeal:—that plaintiffs had failed to appeal the decision of the building inspector to the zoning board of appeals, as the initial step necessary to achieve a direct judicial review, first, in the Superior Court (under Rule 80B M.R.C.P.) and thereafter in this Court, and, therefore, plaintiffs are barred from *collateral* judicial review of the merits of their substantive claims of administrative violation of the Lewiston Zoning Ordinance.

### 2.

It has been factually established that plaintiffs failed to appeal to the zoning board of appeals from the building inspector's issuance of a building permit to defendant company. Plaintiffs contend that, despite this failure, they are entitled to the collateral judicial review they now seek because: (1) the Lewiston Zoning Ordinance, although mentioning a right of appeal to the zoning board of appeals, was silent concerning the time for such appeal and, hence, in practical terms, plaintiffs should not be held at fault for failing to resort to the *direct* course of administrative and judicial review; (2) even if direct appeal proceedings had been pragmatically available to them, plaintiffs were unable to "bifurcate" their claims into the appropriate administrative and judicial channels; (3) in any event, the zoning board of appeals lacked power to stop, pending appeal, the construction which had already been commenced by defendant company; (4) the building inspector's issuance of the building permit was void and, therefore, may be declared a nullity in a collateral judicial attack; and (5) general principles acknowledged by this Court, in particular in *Stanton v. Trustees of St. Joseph's College*, Me., 233 A.2d 718 (1967) and *Summit Realty, Inc. v. Gipe*, Me., 315 A.2d 428 (1974), authorize the full-scale collateral judicial review here sought.

The Superior Court Justice allowed plaintiffs collateral judicial review of the substantive merits of their claims on the grounds that: (1) here, plaintiffs had no timely notice that the building inspector had issued the permit to defendant company and thus were deprived of a practically meaningful opportunity to appeal to the zoning board of appeals as a preliminary to seeking, if necessary, a direct judicial review and (2) since it appears *as a matter*

---

1. On July 26, 1973, before the filing of a responsive pleading, plaintiffs moved to amend without need for the Court's consent. Rule 15(a) M.R.C.P.

2. The zoning restrictions here involved were superseded by the provisions of the new zoning ordinance which went into effect ten days after the instant building permit had been issued.

*of law* that defendant company was not entitled to the building permit issued to it, the collateral judicial review sought by plaintiffs should be allowed.

We decide that, in so ruling, the presiding Justice committed error, and the appeal of defendant company must be sustained.

### 3.

To afford better understanding of the reasons for our decision we advert briefly to the facts of the controversy.

Still before us, as facts undisputed, are the events involved in our decision in *Gagne v. Inhabitants of City of Lewiston,* supra.

In 1969 defendant company had determined to replace its wood frame garage on a so-called "split lot" in the City of Lewiston. That lot, and the then existing garage, were bisected by the boundary between the "Residential A" and "Industrial" Zones.[3] Since the portion of the garage in the Industrial Zone constituted a "permitted use" in that zone, demolition and new construction as to it appeared to be matters of right, upon compliance with applicable set-back and building code provisions. The portion jutting into the Residential A Zone, however, because in existence on the effective date of the zoning ordinance, persisted as a "non-conforming use."

Since defendant company's project of complete replacement would have effects upon a non-conforming use, Section 10.b of the Lewiston Zoning Ordinance came into play. That section required the approval of the zoning board of appeals where a non-conforming use was to be "enlarged or altered." Accordingly, defendant company obtained the requisite approval.

On the appeal by abutting property owners to this Court, we held that the "demolition of an existing building and the erection of an entirely new one" was not authorized by the concepts, "enlarged", "altered" or "erection of additional buildings", as contained in Section 10.b of the Lewiston Zoning Ordinance. *Gagne v. Inhabitants of City of Lewiston,* supra, p. 582.

The parties do not fully agree as to the events transpiring after the *Gagne* decision.[4]

Undisputed are these facts. Defendant company made changes in its plans, limiting reconstruction to less than the entire building. It then obtained the November 20, 1972 building permit here at issue which authorized erection of a concrete garage in the Industrial Zone portion of its property extending 30 feet into the adjacent Residential Zone.[5]

Defendant company, through affidavits of its officers and answers to plaintiffs' interrogatories, claims that construction began on April 30, 1973, approximately five months after issuance of the permit. Plaintiffs, also through affidavits, dispute that date, asserting that renovation actively commenced later, in June, 1973.

Believing the proposed concrete replacement violative of the zoning ordinance, plaintiffs requested that defendant company discontinue its project. When defendant company refused to halt construction, plaintiffs—at the end of July, 1973—initiated the instant action in the Superior Court.

The parties agree that work continued during the summer of 1973, resulting in completion of the cement portion by autumn. They also agree that a portion of

---

3. That boundary is equally applicable to the present situation.

4. The effect of their disagreement on the propriety of summary judgment is discussed infra.

5. Although the permit does not appear in the record, the parties have agreed through their pleadings as to the date of its issuance and its content.

the old frame garage remains in the residential part of defendant company's lot, forming part of the now partially renovated entirety.

However, the location of the renovated portion vis-a-vis the zone boundaries is disputed. Defendant company maintains that the cement section extends 30 feet into the Residential Zone in compliance with the November 20, 1972 permit and the ordinance. Plaintiffs contend that the new portion goes beyond that 30-foot limit.

Plaintiffs attack the validity of the issuance of the November 20, 1972 building permit primarily on the basis of Section 10(b) of the Lewiston Zoning Ordinance, the section we construed in the *Gagne* case. It provides:

"A building of nonconforming use may be enlarged or altered or additional buildings may be erected on the same or an adjacent parcel of land in the same single or joint ownership of record at the time it is placed in a zone for an extension of such use, *provided the board of appeals shall rule* that such addition or alteration is not substantially more detrimental or injurious to the neighborhood." (emphasis supplied)

Plaintiffs contend, and the presiding Justice ultimately agreed, that the now completed reconstruction of a portion of defendant company's garage constitutes an "enlargement" of a non-conforming use for purposes of Section 10(b). Since that section requires approval by the board of appeals for any such enlargement, the building inspector had no authority, plaintiffs argue, to issue the permit without resort to the board.[6] They, therefore, urge affirmance of the judgment below, at the same time seeking, through their cross-appeal, modification to require removal of the entire garage.

In addition to its affirmative defenses, defendant company contends on the merits that Section 10(b) of the zoning ordinance does not apply to its new cement garage. Arguing that the renovation did not constitute an "enlargement" subject to that section, defendant company cites Section 2(b) of the ordinance as supportive of its right to operate 30 feet into the Residential Zone as if it were in the Industrial Zone. Section 2(b) reads as follows:

"Where a zone boundary line divides a lot in a single or joint ownership of record at the time such line is adopted, the regulations for the less restricted portion of such lot shall extend not more than thirty (30) feet into the more restricted portion, provided the lot has frontage on a street in the less restricted zone."[7]

The contention of defendant company is that since it did no more than construct for *permitted* uses by limiting its renovation to the Industrial Zone plus 30 feet into the Residential Zone, defendant company needed nothing other than the November 20, 1972 building permit to proceed.[8] It therefore contends that the Superior Court judgment, upholding the contrary reading of the ordinance asserted by plaintiffs, erroneously dealt with the substantive merits of plaintiffs' claim.

4.

We conclude that in all the instant circumstances it is not open to plaintiffs to have a decision of the merits of the above-described substantive issues by the collateral judicial review here undertaken.

---

6. Plaintiffs also alleged company's non-compliance with the permit in that (1) construction commenced more than six months after its issuance, and (2) the renovated portion extended more than 30 feet into the Residential Zone. The presiding Justice's revocation of the permit mooted these claims for his purposes; we also do not reach them.

7. An affidavit of one of company's officers asserts, uncontradicted by plaintiffs, that company's lot fronts on a street in the Industrial Zone.

8. Company denies the allegations of non-compliance with the building permit cited in n. 6, supra.

We arrive at this conclusion on the basis of general principles governing the judicial review of administrative action, principles which this Court previously had occasion to apply, specifically in relation to the Public Utilities Commission, in *Stoddard v. Public Utilities Commission*, 137 Me. 320, 19 A.2d 427 (1941). See: *Lewiston, Greene and Monmouth Telephone Company v. New England Telephone and Telegraph Company*, Me., 299 A.2d 895, 902–904 (1973).

In *Stoddard*, as here, plaintiff had failed to pursue procedures statutorily afforded to allow direct judicial review of administrative action and later sought a collateral judicial review sounding in equity. Acknowledging that a court of equity has the general power to enjoin an invalid administrative order, this Court nevertheless decided in *Stoddard* that such general equity power may not be utilized if a remedy prescribed by law, and to be deemed exclusive, is adequate in the circumstances.

■ We now decide that, as was the situation in *Stoddard*, the Legislature has here provided a remedy (at law), intended to be exclusive, which, under the rationale of *Stoddard*, bars the exercise of jurisdiction in equity if such remedy is adequate in the circumstances here involved. Specifically, 30 M.R.S.A. § 4963 and § 2411 (and the Lewiston Zoning Ordinance itself), as in effect on the date of issuance of the building permit here attacked, provide for an appeal from action (or non-action) of the building inspector to the zoning board of appeals, and from that board directly to the Superior Court (in accordance with procedures delineated in Rule 80B M.R.C. P.), the judgment of the Superior Court being further subject to this Court's direct review.

The critical question, then, is whether such remedy was in the instant circumstances adequate, thus to foreclose the availability of a *collateral* judicial review predicated upon the traditional jurisdiction of equity to prevent irreparable injury as arising from inadequacy of the remedy at law.

A complicating feature, here, is that in authorizing (as it must under statutory requirements) an appeal from the decision of the building inspector to the zoning board of appeals, the Lewiston Zoning Ordinance failed to designate a time limitation for the taking of the appeal. As to such situation, we decided in *Keating v. Zoning Board of Appeals of the City of Saco,* supra, that a time limitation of 60 days commencing to run from the date of the building inspector's decision, rather than notice of such decision, is read into the ordinance as if expressly stated in it, subject, however, to the restricted exception that "within a narrowly extended range" of time after expiration of such 60 day time for appeal, a Court of competent jurisdiction may reinstate the right of appeal to the board of zoning appeals if the Court

" . . . finds special circumstances which would result in a flagrant miscarriage of justice." (p. 524 of 325 A.2d)

In arriving at this rule in *Keating,* we carefully analyzed, and reconciled, the competing interests of builder and nearby landowner. First, to avoid arbitrariness and provide uniformity, we elected a fixed period and rejected *ad hoc* determination of "reasonableness." Second, we settled upon 60 days as an appropriate length of time for striking a balance between the builder's interest in speed as exacerbated by the short building season of this climate, and the opponent's interest in sufficient time to know, or have notice, of issuance of the permit. Third, our decision to gear the appeal period to the time the official action is taken, rather than to notice of it, reflected the realities of the practices of building inspectors:—they do not, and probably could not, notify all persons capable of being aggrieved by their action (or non-action). Finally, again recognizing, and to ameliorate, the predicament of potentially aggrieved persons who lack no-

tice, we carved out the narrow "flagrant miscarriage of justice" exception and left application of that exception to be decided judicially, rather than administratively, to prevent local arbitrariness.

These factors so carefully evaluated by us in formulating the *Keating* rule—and which specifically took account of the pragmatic difficulties which could confront potentially aggrieved persons lacking notice of building inspector action in time to meet the prescribed 60 day time limit for appeal to the zoning board of appeals as the first step to achieve direct judicial review—are highly relevant to the present question whether the avenue of direct judicial review, as it may have been here available to the plaintiffs, was a remedy to be deemed adequate as to them.

By adopting the *Keating* rule, we were necessarily concluding that, *in ordinary course*, the 60 day time limitation for appealing the decisions of a building inspector to a zoning board of appeals running from the date of the building inspector's decision (rather than notice of it), conjoined with the safety valve of the "flagrant miscarriage of justice" exception, is a remedy adequate to protect the interests of all concerned, notwithstanding that potentially aggrieved persons often will lack notice of the building inspector's action triggering the running of the time for appeal.

█ We, therefore, decide that the presiding Justice erred in holding that plaintiffs' lack of notice of the issuance of the building permit in time to take an appeal

to the zoning board of appeals (as prescribed by *Keating*) was a fact sufficient *without more* rendering the avenue of direct judicial review an inadequate remedy for these plaintiffs and warranting their resort to the equity jurisdiction of the Superior Court to achieve, collaterally, a full-scale judicial review of the substantive merits of their claims.

Since the rule developed in *Keating* took into special account precisely this point that it was likely that persons potentially aggrieved by the decision of a building inspector would lack timely notice of it, it would denigrate the policy interests which *Keating* sought to further were such lack of notice *by itself* to be deemed sufficient to justify collateral judicial review of the merits of the administrative action taken.

In the instant circumstances, then,—as would be the case in any situation governed by the *Keating* rule—that the plaintiffs lacked notice of the action of the building inspector before expiration of the 60 day period for taking an appeal to the zoning board of appeals did not *per se* warrant collateral judicial review on the merits of plaintiffs' claims that the building inspector had violated the zoning ordinance.[9] Rather, plaintiffs are entitled only to assert their lack of notice to a Court of competent jurisdiction as one possible factor to be evaluated by the Court to ascertain whether the restricted exception enunciated in *Keating* itself has application, i.e., whether the right to appeal to the zoning board of appeals should be reinstated in light of all the circumstances bearing on all the equities of the situation.[10]

---

9. We reject the claim that such application of the *Keating* rule, depriving an aggrieved person who lacked notice of the action of a building inspector of opportunity for judicial review, is a violation of due process of law. The *Keating* decision itself belies the validity of such contention.

10. Such approach is within the spirit of the views we recently enunciated in *State ex rel. Brennan v. R. D. Realty Corporation*, Me., 349 A.2d 201 (1975) concerning the overall problem of appropriate judicial-administrative relationships.

The conclusion is likewise consonant with the general description of the interrelationship of administrative and judicial functioning in the area of zoning stated in *Frost v. Lucey*, Me., 231 A.2d 441, 448 (1967):

"Usually local boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application. In discharging such responsibility, ordinarily local boards of appeal are endowed with a liberal

Plaintiffs have sought to avoid this outcome by adverting to a dictum in *Summit Realty, Inc. v. Gipe*, Me., 315 A.2d 428 (1974) based, in turn, on *Stanton v. Trustees of St. Joseph's College*, Me., 233 A.2d 718 (1967), as support for the approach here taken by the Superior Court.

Reference to these cases avails plaintiffs nothing. *Stanton* and *Summit Realty* are in full agreement with the legal principles upon which we have here relied. The decision in *Stanton* was an application to the particular circumstances there involved of precisely the *Stoddard v. Public Utilities Commission*, supra, approach. In *Stanton* the remedy established through the administrative forum and subsequent direct judicial review of the administrative action was held to be an inadequate remedy because the gravamen of the complaint in *Stanton* concerned matters which were "beyond the jurisdiction of the administrative agency to determine." (p. 724 of 233 A.2d) A collateral resort to equity jurisdiction was thus appropriate to have " . . . private rights protected against irreparable harm by injunctive process." (p. 725 of 233 A.2d) The dictum in *Summit Realty* is only a reiteration of this same principle. [11]

Here, it is manifest that the complaint fails to allege action by an administrative official beyond his powers and thus without "jurisdiction." Under Section 2(b) of the Lewiston Zoning Ordinance the building inspector was authorized to consider whether a building permit should be issued.

Further, it was within the administrative province, through action by the zoning board of appeals under Section 13(g), to revoke an improperly issued building permit.

■ That the zoning board of appeals lacked power to afford injunctive relief *pending* a final order of revocation cannot justify the *total by-passing* of that body. Should the board of zoning appeals revoke the building permit as erroneously issued, the board would have power to order the removal of any interim construction, as the equities might dictate. Moreover, *pending* the administrative proceedings a party could seek *interim* injunctive relief from a court of equity if irreparable injury was imminent. See: *State ex rel. Brennan v. R. D. Realty Corporation*, Me., 349 A.2d 201, 207 (1975).

Two other cases relied upon by plaintiffs to justify the action of the Superior Court—*Frost v. Lucey*, Me., 231 A.2d 441 (1967) and *Walsh v. City of Brewer*, Me., 315 A.2d 200 (1974)—are patently distinguishable.

In *Frost v. Lucey* the plaintiff sought to enjoin as a nuisance the operation of certain premises as a non-conforming use. That operation had come into being *without official administrative action*. Since there had been no administrative action to subject to direct judicial review, the principle of *Stoddard v. Public Utilities Commission* was inapplicable. There existed no statutory remedy, intended as exclusive, to

---

discretion and their action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal."

As further stated in *Frost v. Lucey*, the public policy served by this usual administrative-judicial method of functioning is that it achieves the desirable objective that judicial review proceeds from

" . . . the benefit of a preliminary determination by responsible municipal zoning authorities who may be better situated

to apply the restrictive regulations of their zoning ordinance."

11. We note, too, that *Town of Windham v. LaPointe*, Me., 308 A.2d 286 (1973) is a further confirmation of the legal principle underlying our present decision. In that case the resort to collateral judicial review was permitted because the claim was that the ordinance under which the administrative agency purported to act was unconstitutional on its face; if such contention was established, plainly the administrative action was beyond the authority lawfully reposed in it.

bar the independent resort to a Court of equity as the means of protecting against the irreparable damage being caused by a private person's allegedly illegal conduct. Similarly, in *Walsh v. City of Brewer* the collateral judicial attack was against a complex course of executive and legislative conduct by municipal officials as to which a remedy was impossible through an appeal to the zoning board of appeals and subsequent direct judicial review.

■ Thus, *Frost v. Lucey* and *Walsh v. City of Brewer* confirm, rather than contradict, the legal principle upon which our decision rests:—a collateral review of the merits of administrative action will not be undertaken by a court of equity *unless* the route of *direct* administrative-judicial appeal is inadequate to prevent irreparable damage.

Decisions by courts of other jurisdictions support this approach as a sound policy of administrative-judicial relationship.

In *Beam v. Erven*, 133 Ill.App.2d 193, 272 N.E.2d 685 (1971), a nearby landowner sought injunctive relief to prevent construction pursuant to a variance granted by the zoning board after public notice and hearing. Plaintiff did not appear at the hearing and did not pursue the statutorily provided appeal from the board. Holding that statutory appeal "exclusive", the Court in *Beam* affirmed the trial Justice's dismissal of the complaint.

Even more analogous to the facts before us is the case of *Bischoff v. Hennessy*, Ky, 251 S.W.2d 582 (1952). There, as here, abutting property owners had failed to pursue within the provided time limit the statutory remedy of direct appeal from the zoning authorities to court. In *Bischoff* they sought equitable relief from the zoning commission decision they had failed timely to appeal. The Kentucky Court rejected their collateral attack, noting that the statutory remedy "afforded an adequate remedy at law." (p. 584 of 251 S. W.2d) That plaintiffs no longer had

available the statutory remedy made no difference:—the limited appeal period

"would be futile . . . if . . . other remedies . . . were available to a litigant at any time or in any circumstance." (p. 583 of 251 S.W.2d)

See also: *Coffey v. Marietta*, 212 Ga. 189, 91 S.E.2d 482 (1956); *Washington Seminary, Inc. v. Bass*, 192 Ga. 808, 16 S.E.2d 565 (1941); *Dallas v. Halbert*, Tex.Civ. App., 246 S.W.2d 686 (1952); *Boyle v. Building Inspector of Malden*, 327 Mass. 564, 99 N.E.2d 925 (1951); *Clap v. Municipal Council of Attleboro*, 310 Mass. 605, 39 N.E. 431 (1942); *Curran v. Delano*, 235 Pa. 478, 84 A. 452 (1912).

5.

Although application of the principles above delineated requires that we sustain the appeal of defendant company, we conclude that we should not instruct the Superior Court to dismiss the complaint of plaintiffs and enter judgment for defendant company.

■ When plaintiffs commenced this action, *Keating v. Zoning Board of Appeals of the City of Saco*, supra, had not been decided and, therefore, plaintiffs were then unaware that they might be able to avail themselves of the benefit of the narrow exception allowed in *Keating* to have their right of appeal to the board of zoning appeals reinstated. True, *Keating* had been decided before the entry of final judgment in the Superior Court. Yet, in light of the Superior Court's disposition of the case—awarding plaintiffs a judgment in their favor on the merits of their claims that the administrative action had violated the Lewiston Zoning Ordinance,—it would be unreasonable to expect of plaintiffs that, in anticipation of the possibility of appellate reversal, they should have taken the precaution to move to amend their complaint to add an alternative claim for reinstatement of the right to appeal to the zoning board of appeals.

622

In all the circumstances we deem it fair that plaintiffs now be allowed opportunity to make such claim for reinstatement under the *Keating* exception. Accordingly, we will remand the case to the Superior Court for further proceedings, with instructions that the Court allow plaintiffs, if they wish, to amend their complaint to claim that, within the "flagrant miscarriage of justice" exception of *Keating*, their right to appeal to the zoning board of appeals be reinstated.

Should plaintiffs not amend, or, having amended, fail to establish facts justifying reinstatement of their right of appeal to the zoning board of appeals, the complaint is to be dismissed and judgment entered for defendant company.

We take the precaution to add comments for the further guidance of the Superior Court in the event plaintiffs do amend and prove facts warranting reinstatement of their right of appeal to the zoning board of appeals. We do this because the record shows that the Justice who here presided in the Superior Court—having erroneously seen fit to reach, and decide, the merits of plaintiffs' claims of administrative violation of the Lewiston Zoning Ordinance—concluded that plaintiffs had established the alleged violation *as a matter of law*. Absent present comment by us concerning the correctness, or error, of this ruling, the Superior Court, on remand, if it found that plaintiffs were within the scope of the *Keating* exception, might believe that a case capable of being decided as a matter of law should be decided by the Court without need to remand the parties to the zoning board of appeals.

To avoid the possibility of such outcome we mention that the record before us discloses that the presiding Justice erred in concluding that plaintiffs should have summary judgment in their favor because they had established the merits of their substantive claims as a matter of law.

■■ The validity of plaintiffs' contentions turns on whether defendant company's planned renovation represented an "enlargement" of a non-conforming use requiring resort to the zoning board of appeals under Section 10(b) of the ordinance. If the renovation merely affected permitted uses, approval of the building inspector was sufficient. We read plaintiffs' assertion of "enlargement" as twofold. They appear to regard the *physical attachment* of a permitted use (the renovated portion) to a non-conforming use as such an "enlargement." They also claim "enlargement" in that the improved section will *prolong the existence* of the older, non-conforming portion. We view either assertion as insufficient to support a ruling of "enlargement" *as a matter of law*.

The contention that physical attachment of permitted [12] renovation to the non-conforming use constitutes "enlargement" cannot withstand analysis. Such a conclusion would deny to owners of "split lots" uses normally permitted in the less restricted zone, and, in effect, extend the more restricted zone beyond its legislatively determined boundary. Courts in other jurisdictions have resisted similar arguments. *Nusser v. Board of Adjustment of City of Newark*, 134 N.J.L. 174, 46 A.2d 657 (1946); *Anchor Steel and Conveyor Company v. City of Dearborn*, 342 Mich. 361, 70 N.W.2d 753, 756 (1955); *Kolodny v. Building Commissioner of Brookline*, 346 Mass. 289, 292, 191 N.E.2d 691 (1963); *Stoller v. Board of Zoning and Appeals of Town of North Hempstead*, 40 App.Div.2d 867, 337 N.Y.S.2d 946 (1972).

■ The assertion that the mere prolongation of the life of a non-conforming structure represents "enlargement" is somewhat more persuasive in view of our

12. We assume for our purposes, here, that the renovated section extends only 30 feet into the Residential A Zone. If it in fact goes beyond that limitation, plaintiffs have additional sources of complaint. The dispute of this material fact also raises questions as to the propriety of summary judgment.

doctrine favoring extinction of non-conforming uses. *Gagne v. Inhabitants of City of Lewiston,* supra, at 581. Nevertheless, we reject a *per se* rule that prolongation alone, without consideration of any other circumstance, constitutes "enlargement" *as a matter of law*—at least when, as here, the ordinance itself purports to make no such provision. Normally, modernization of facilities connected with a non-conforming use is permissible. *Endara v. City of Culver City,* 140 Cal.App.2d 33, 294 P.2d 1003 (1956); *Horwitz v. Dearborn Tp.,* 332 Mich. 623, 52 N.W.2d 235 (1952); Annot. 87 A.L.R.2d 4 at § 12, p. 64.

■ Further, we find no basis in the facts, here, upon which to conclude, beyond rational dispute, that defendant company's

renovation will indeed prolong the existence of the remaining non-conforming portion. The questions of prolongation, and of additional factors which might show "enlargement", are thus in dispute or not fully developed. They are, moreover, questions peculiarly appropriate for administrative determination. [13]

The entry is:

*Appeal sustained.*

*Case remanded to the Superior Court for further proceedings in accordance with the opinion herein.*

DUFRESNE, C. J., and DELAHANTY, J., did not sit.

13. By this discussion showing that the instant record does not support a decision on the merits in favor of plaintiffs as a matter of law, thus to require—*should* plaintiffs show themselves entitled to the benefit of the *Keating* exception—that plaintiffs pursue a reinstated appeal through the zoning board of appeals, we intimate no opinion whether or not such prior resort to the administrative forum would be necessary in a situation in which the merits of the substantive claims of the parties are capable of being settled strictly as a matter of law. Frequently,—and even, for example, should the question of law relate only to the interpretation of the meaning of terms of the ordinance,—the experience and expertise of the administrative forum may assist the Court in reaching an appropriate decision on the issue of law. It becomes arguable, therefore, that a sound policy to govern administrative judicial relationships should require a prior resort to the administrative forum.