**Robert W. FISHER and Joanne Ferriter**

**v.**

**Kenneth DAME and Robert Raeside, et al.**

Supreme Judicial Court of Maine.

Argued May 4, 1981.

Decided Aug. 6, 1981.

---

Calkins & Wuesthoff, R. John Wuesthoff, Thomas P. Downing (orally), Portland, for plaintiffs.

Verrill & Dana, Charles A. Harvey, Jr. (orally), Portland, for Dames, Raesides and Pearsalls.

Richard & Brenda Henley, pro se.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Plaintiffs Robert W. Fisher and Joanne Ferriter have appealed from a judgment of the Superior Court (York County) dismissing a civil action brought by them against defendants Kenneth Dame and Robert Raeside, and others. The complaint alleged that a series of conveyances of real estate involving defendants constituted the creation of a "subdivision" within the definition of that term in 30 M.R.S.A. § 4956(1), as well as in Art. 3.2 of the so-called "Zoning" Ordinance of the Town of Eliot, and that such subdivision was created in violation of 30 M.R.S.A. § 4956(2)(A) and the so-called "Moratorium" Ordinance of the Town of Eliot. Plaintiffs sought a judgment declaring the alleged subdivision illegal and also equitable relief in the form of an injunction to compel rescission of the alleged illegal conveyances.

Interpreting plaintiffs' action to be a direct appeal to the Superior Court from a decision made by the Board of Appeals of the Town of Eliot, which ruled that the conveyances had not created a subdivision, the Superior Court dismissed the action for failure of compliance with the time requirement for the commencement of such an appeal.[1]

Plaintiffs are owners of property adjacent to a 35 acre tract of land on Frost Hill Road in Eliot purchased by defendants Kenneth Dame and Robert Raeside from George Braden on or about November 1, 1977.[2] Defendants Kenneth Dame and Robert Raeside[3] are land developers and builders in Eliot. They conduct their business under the name of Early American Homes.

The facts giving rise to this action are not in dispute. On May 13, 1978 the Town of Eliot adopted a "Moratorium" Ordinance for the purpose of fostering

"orderly growth and development in the Town of Eliot by allowing the Municipal Officials and inhabitants of the Town of Eliot a reasonable time to develop and adopt a Growth Management Ordinance."

The Ordinance prohibited

"land development[4] until a Growth Management Ordinance has been prepared by the Planning Board and has been approved by a majority of those voting in a town meeting, but in no event shall ... [the Moratorium] extend beyond April 1, 1979."

The moratorium on land development expired on April 1, 1979. The record fails to disclose whether the Town ever enacted a Growth Management Ordinance.

During the period the Moratorium Ordinance was in effect, defendants Dame and

---

1. 30 M.R.S.A. § 2411(3)(F) provides that an appeal from a decision of a Board of Appeals may be taken pursuant to Rule 80B M.R.Civ.P. "within 30 days after the decision is rendered." The Eliot Board of Appeals informed plaintiff Fisher of its decision by letter dated May 20, 1980. Plaintiffs commenced suit in Superior Court on June 24, 1980, more than 30 days thereafter.

2. Mr. Braden took back a mortgage deed with the condition that during 1978 or 1979 he would release several parcels from the mortgage obligation.

3. The other defendants are Merideth Dame, Russell Boyd Dame, Jennifer Dame (wife and children of Kenneth Dame), Patricia Raeside (wife of Robert Raeside), Eleanor and David Pearsall and Richard and Brenda Henley.

4. Section 5 of the Moratorium Ordinance defined "land development" as

"the change in the use of developed or undeveloped land to residential subdivisions of more than three units, a unit being the normal living accomodations for one family and shall include mobile homes, hotels, motels, apartment buildings, rooming houses, and any other change of use which substantially affects the characteristics of the land."

Raeside undertook a series of conveyances out of the 35 acre tract they acquired from Mr. Braden in 1977 (Mr. Braden having previously released three parcels from the mortgage). In November, 1978 and March, 1979, defendants conveyed portions of these three parcels to Merideth Dame, Russell Boyd Dame, Jennifer Dame, Patricia Raeside, Robert Raeside (individually) and David Pearsall. Also during this time, a portion of the property that had been conveyed to Meridith Dame was conveyed by her to Eleanor Pearsall, and the property conveyed to Robert Raeside, individually, was conveyed by him to Richard and Brenda Henley.

On September 26, 1979 plaintiff Fisher sent a letter, accompanied by supplementary materials, to the Eliot Planning Board, the Eliot Appeals Board, the Board of Selectmen, the Town Attorney, the Attorney General, the Department of Environmental Protection and the Maine Municipal Association. In this letter plaintiff Fisher alleged that the above described conveyances to the relatives of Kenneth Dame and Robert Raeside constituted the creation of a subdivision, as that term is defined in 30 M.R.S.A. § 4956(1) and Art. 3.2 (Definitions) of the Eliot Zoning Ordinance.[5] The letter further alleged that the subdivision created by the conveyances was illegal because it had been created during the period of the mora-

torium and because there had been no Planning Board approval as required by statute.[6]

The Eliot Planning Board began consideration of plaintiff Fisher's charges at its February, 1980 meeting. The question being considered, as stated by the presiding board member, was whether "there is an illegal subdivision on Frost Hill Road." The Planning Board heard from Mr. Fisher and his counsel, and from Kenneth Dame, Robert Raeside, and the Town Attorney. The Board postponed a decision on the question pending receipt of a legal opinion from Town Counsel. Consideration of plaintiffs' charges was resumed at a special meeting of the Planning Board on March 4, 1980, at which a letter from Town Counsel was read. The Planning Board voted on, and adopted, the following findings:

"(1) The Braden transfer or release of property to K. Dame and R. Raeside did not create an illegal subdivision of land.

"(2) The six lots transferred to relatives of K. Dame and R. Raeside meet the requirements as having been gifts to relatives and thus do not create an illegal subdivision.

"(3) That there is now existing a two lot division on the K. Dame and R. Rae-

---

**5.** 30 M.R.S.A. § 4956(1) states that a subdivision is:

"the division of a tract or parcel of land into 3 or more lots within any 5-year period, which period begins after September 22, 1971, whether accomplished by sale, lease, development, buildings or otherwise, provided that a division accomplished by devise, condemnation, order of court, gift to a person related to the donor by blood, marriage or adoption, unless the intent of such gift is to avoid the objectives of this section, or by transfer of any interest in land to the owner of land abutting thereon, shall not be considered to create a lot or lots for the purposes of this section.

"In determining whether a tract or parcel of land is divided into 3 or more lots, the first dividing of such tract or parcel, unless otherwise exempted herein, shall be considered to create the first 2 lots and the next dividing of either of said first 2 lots, by whomever accomplished, unless otherwise exempted herein, shall be considered to create a 3rd lot,

unless both such dividings are accomplished by a subdivider who shall have retained one of such lots for his own use as a single family residence for a period of at least 5 years prior to such 2nd dividing. Lots of 40 or more acres shall not be counted as lots.

"For the purposes of this section, a tract or parcel of land is defined as all contiguous land in the same ownership, provided that lands located on opposite sides of a public or private road shall be considered each a separate tract or parcel of land unless such road was established by the owner of land on both sides thereof."

Art. 3.2 of the Eliot Zoning Ordinance (effective July 31, 1979) tracks the statutory definition.

**6.** Section 4956(2)(A) of 30 M.R.S.A. states:

"All requests for subdivision approval shall be reviewed by the municipal planning board, agency or office, or if none, by the municipal officers . . . ."

side property on Frost Hill. Any further subdivision of land must come before the Planning Board for review under Subdivision Standards."

Plaintiff Fisher was notified of the Planning Board's decision by letter dated March 31, 1980. On the same day, he filed a request for an appeal to the Board of Appeals from the Planning Board decision, asking the Board of Appeals to

"interpret the provisions of the Moratorium Ordinance (May 13, 1978) and ... M.R.S.A. Title 30 Sec. 4956 to overturn the decision of the Eliot Planning Board of March 4, 1980."

The appeal was considered by the Board of Appeals at meetings on April 17, April 23, and May 15, 1980. After making various findings of fact, the Board of Appeals found that

"the decision of the Planning Board in the March 31, 1980 letter to Robert Fisher [is] true and just [and is] based on the absence of findings of fact to the contrary."

Plaintiff Fisher was notified of the decision of the Board of Appeals by letter dated May 20, 1980. On June 24, 1980, plaintiffs filed the instant action in Superior Court asking for declaratory and equitable relief. The complaint requested

"that ... [the] Court issue a Declaratory Judgment that the deeding of parcels of land from the thirty-five acre parcel owned by the defendants, and subsequent deeding of those parcels all as described in the Complaint constituted a subdivision of land in violation of Title 30, M.R.S.A. § 4956; further declare that each of the transactions deeding parcels from the thirty-five acre parcel, and subsequent deeding of those parcels is void as contrary to law and public policy; order the rescission of each of the transactions herein declared to be illegal; and grant such further relief as is deemed necessary and proper."

Described in the complaint in detail were the various conveyances to family members. No reference was made in the complaint to the proceedings that had been had before the Planning Board and the Board of Appeals. After it had held a hearing on a motion by defendants for summary judgment in their favor, the Superior Court decided that plaintiffs' complaint is to be interpreted as seeking, specifically, a determination that the conveyances in question are illegal in that they effect a subdivision in violation of 30 M.R.S.A. § 4956. So interpreting the complaint, the Superior Court decided that it must be considered an appeal, utilizing M.R.Civ.P. 80B, which was not filed within 30 days of the decision, as required by Art. 6.9(d)(4) of the Eliot Zoning Ordinance in accordance with 30 M.R.S.A. § 2411(3)(F); and that, therefore, the

"court lacks jurisdiction to hear this matter due to plaintiffs' failure to file a timely appeal."

The only issue raised by plaintiffs' appeal to this Court is whether their complaint was properly dismissed.

We decide that the dismissal was correct, whatever may be the appropriate characterization of the nature of plaintiffs' action, and, therefore, we deny the appeal and affirm the judgment of the Superior Court.

The nature of the action brought by plaintiffs can fairly be characterized in either of two ways. It can be taken, as the Superior Court interpreted it, to be an undertaking to obtain direct judicial review of the administrative action of the Eliot Board of Appeals through an appeal, as authorized by 30 M.R.S.A. § 2411(3)(F), Rule 80B M.R. Civ.P., and Art. 6.9(d)(4) of the Eliot Zoning Ordinance. Yet, more particularly in light of the specific allegations of the complaint, plaintiffs' action may be characterized, perhaps even more properly, to have been what plaintiffs contend it was: an independent civil action, instituted collaterally to the pending administrative proceeding, which, invoking the equity jurisdiction of the Superior Court and declaratory judgment procedures, attacked the legality of the conveyances as allegedly constituting a subdivision and sought equitable remedy.

It would thus appear that the Superior Court may have begged the real question at issue by refusing to recognize plaintiffs' action as an independent plenary proceeding sounding in equity, and treating it only as a purported direct "appeal" for judicial review of an administrative decision. Hence, if we are to affirm the Superior Court's dismissal of plaintiffs' action, our analysis must evaluate whether on the facts of this case plaintiffs had no basis to be before the Superior Court either (1) by a complaint seeking direct review, by appeal, of the administrative determination that the conveyances did not create a subdivision or (2) by a complaint instituting an independent plenary action, collateral to the pending administrative proceeding, asking the Superior Court to exercise its equity jurisdiction regarding the conveyances as allegedly constituting an illegal subdivision.

■ We turn, first, to the approach taken by the Superior Court. We agree with the Superior Court that, interpreted to be a direct appeal of administrative action, pursuant to 30 M.R.S.A. § 2411(3)(F), Rule 80B M.R.Civ.P., and Art. 6.9(d)(4) of the Eliot Zoning Ordinance, plaintiffs' action would have to be dismissed as not timely, because the appeal was taken after expiration of the prescribed 30 day period within which it must be commenced.

Addressing the other alternative not dealt with by the Superior Court, that plaintiffs' action was a collateral and independent resort to a court of equity, seeking an adjudication of the illegality of the conveyances by defendants as a subdivision and appropriate equitable relief, we conclude that such action may not lie in the instant circumstances and, therefore, the dismissal of the action by the Superior Court was not error.

There have been several decisions by this Court on the issue now being considered.

In *Stoddard v. Public Utilities Commission*, 137 Me. 320, 19 A.2d 427 (1941) the plaintiff brought an action in equity to enjoin the enforcement of a regulation promulgated by the Public Utilities Commission. The Court did not reach the merits of plaintiff's contention, finding that the remedy sought was not open to plaintiff because the legislature had provided an adequate remedy at law. Revised Statutes 1930, Chap. 62, § 63 provided that

"Questions of law may be raised by alleging exceptions to the ruling of the commission on an agreed statement of facts, or on facts found by the commission . . . ."

The Court stated:

"The doctrine that equity may interfere to enjoin the enforcement of a void law, ordinance or order is not absolute but is subject to the qualification that the failure to act will result in irreparable injury to the plaintiff's property or property rights and that there is no adequate remedy at law. *See Chapman v. City of Portland*, 131 Me., 242, 245, 160 A., 913. Where a party is given a special remedy by statute as is here provided there is no reason which justifies the interposition of equity. The statutory remedy is exclusive. *Sykes v. Jenny Wren Co.*, [D.C. Cir.], 78 Fed. (2d), 729." *Id.*, at 323, 19 A.2d 428–429.

In *Lewiston, Greene and Monmouth Telephone Company v. New England Telephone and Telegraph Company*, Me., 299 A.2d 895 (1973) we further clarified the holding in *Stoddard* that a collateral effort at adjudication by invoking a court's equity jurisdiction is not available when the remedy provided at law is adequate. In the process of explaining the scope of *Stoddard*, we mentioned several situations in which the remedy afforded through direct appellate review could properly be deemed inadequate. Thus, we said:

"By this language in *Stoddard* a likelihood was projected that *Stoddard* could be interpreted to have eliminated collateral judicial intervention, through the exercise of equity proceedings, even in the multitudes of situations in which the 'appeal' remedy is really inadequate either because: (1) the statutory 'appeal' being available only from a 'final' (rather than 'interlocutory') order, the appeal might not lie, in many instances, to permit re-

view of invalid or unconstitutional administrative action not yet 'final' until a time too late to avoid imminently irreparable injury or (2) even if the administrative order be 'final', the scope of the 'appeal' had become defined, *O'Donnell, Pet'r.*, 147 Me. 259, 86 A.2d 389 (1952) and earlier cases cited therein, to exclude the constitutionally required independent judicial judgment on the facts (as well as the law) material to the adjudication of constitutional issues." *Id.*, at 904.

In *Gagne v. Lewiston Crushed Stone Company, Inc.*, Me., 367 A.2d 613 (1976) we brought the same approach to bear in the context of zoning regulation.

We stated the controlling legal principle to be that

"a collateral review of the merits of administrative action will not be undertaken by a court of equity *unless* the route of *direct* administrative-judicial appeal is inadequate to prevent irreparable damage." *Id.*, at 621.

We held that in the area of zoning the legislature, by enacting 30 M.R.S.A. § 4963 and § 2411,[7] had provided a remedy at law, and that under the rationale of *Stoddard* and *Lewiston, Greene and Monmouth Telephone Company* that remedy, if adequate, must be taken to be exclusive. *See also, Fletcher v. Feeney*, Me., 400 A.2d 1084 (1979).

■ The principle that emerges from these cases is that when a legislative body has made provision, by the terms of a statute or an ordinance, for a direct means by which the decision of an administrative body can be reviewed in a manner to afford adequate remedy, such direct avenue is intended to be exclusive.[8] Resort to the courts by alternative routes will not be tolerated, subject only to an exception for those circumstances in which the course of "direct appeal" review by a court is inadequate and court action restricting a party to it will cause that party irreparable injury.

In the case at bar, then, we must first evaluate whether plaintiffs had opportunity at all, through the operation of statutes or ordinances, to have a direct judicial review by "appeal" of the decision made by the Planning Board of the Town of Eliot.

Should we conclude that such direct judicial review by appeal was available to plaintiffs, the second

"critical question ... is whether such remedy was in the instant circumstances adequate, thus to foreclose the availability of a *collateral* judicial review predicated upon the traditional jurisdiction of equity to prevent irreparable injury as arising from inadequacy of the remedy at law." *Gagne v. Lewiston Crushed Stone Company, Inc., supra*, at 618.

■ We conclude that plaintiffs had available to them the means to obtain direct judicial review of the administrative determination concerning the legality of the alleged subdivision.[9]

Municipal approval of all subdivision proposals is required by the law of this State.

---

**7.** 30 M.R.S.A. § 4963 and § 2411 provide for an appeal from the action (or non-action) of the building inspector to the zoning board of appeals, and from that board directly to the Superior Court, in accordance with the procedures delineated in Rule 80B M.R.Civ.P.

**8.** Where the Administrative Procedure Act is applicable, it would appear that a "rule", as defined in 5 M.R.S.A. § 8002(9), is generally open to collateral attack. *See* 5 M.R.S.A. § 8058(2).

**9.** We emphasize that in our view the subject-matter here involved is not properly characterized as "zoning." It goes beyond the narrow statutory definition of "zoning" in 30 M.R.S.A. § 4962(1)(H), which restricts "zoning" to "the division of a municipality into districts and the prescription and reasonable application of different regulations in each district." *Benjamin v. Houle*, Me., 431 A.2d 48 (1981). Under such definition, "zoning" does not comprehend decisions and questions concerning the existence and legality of a *subdivision*. Thus, in the case at bar it does not follow automatically from the fact that 30 M.R.S.A. § 4963 and § 2411 may provide for direct judicial review by "appeal" of "zoning" decisions that such remedy is provided as to determinations regarding *subdivisions*. We must, therefore, make further inquiry to determine whether an avenue for the direct judicial review of administrative determinations as to subdivision issues is provided by statute or ordinance.

Section 4956(2)(A) of 30 M.R.S.A. provides that:

"All requests for subdivision approval shall be reviewed by the municipal planning board, agency or office, or if none, by the municipal officers . . . ."

The Town of Eliot requires such initial approval to come from the Planning Board. Art. 1.3.2 of the Eliot Zoning Ordinance states that

"[a]ll subdivisions shall be subject to Planning Board approval in accordance with a Subdivision Ordinance adopted by the Town or if a Subdivision Ordinance has not been adopted, then Standards adopted by the Planning Board."

■ In the instant case a problem arises because the record does not reveal the existence or content of any "Subdivision Ordinance." In addition, the "Zoning" Ordinance of the Town of Eliot does not contain any express standards to guide the Eliot Planning Board in making subdivision decisions. Yet, we can say that even in the absence of municipal action, such standards are nonetheless provided by statute. Section 4956(3) of 30 M.R.S.A. states that

"[w]hen promulgating any subdivision regulations and when reviewing any subdivision for approval, the planning board . . . shall consider the following criteria and before granting approval shall determine that the proposed subdivision [meets a list of 11 specific criteria]."

Because the § 4956(3) standards are *mandatory*, we take them to have been incorporated into the Eliot Zoning Ordinance through Art. 1.3.2.

Accordingly, we conclude that 30 M.R.S.A. § 4956(2)(A) and § 4956(3), together with Art. 1.3.2 of the Eliot Zoning Ordinance, provide the initial step in the administrative process by which questions regarding subdivisions are to be considered.

■ We conclude, further, that the decisions of the Eliot Planning Board on "subdivision" questions may be appealed to the Eliot Board of Appeals. The Board of Appeals was established by Art. 6.9(a) of the Eliot "Zoning" Ordinance pursuant to 30 M.R.S.A. § 2411, with jurisdiction to hear appeals from "any decision of the Planning Board or Code Enforcement Officer." Art. 6.9(c) Eliot Zoning Ordinance. We regard this language as a grant of jurisdiction sufficient not only to provide the Board of Appeals with the power to review Planning Board decisions on subdivision matters but also to satisfy the requirement in 30 M.R.S.A. § 2411(4) that:

"No board created under this section may assert jurisdiction over any matter unless the municipality has by ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or nonaction may be appealed to the board."

Thus, the specific subject matter of subdivisions, as well as the standards specified by 30 M.R.S.A. § 4956(3) to be utilized to govern the decision-making, are incorporated into the jurisdiction of the Board of Appeals through the "Zoning" Ordinance's grant of power to the Board of Appeals to hear appeals from all decisions of the Planning Board.

We therefore decide that jurisdiction is conferred on the Eliot Board of Appeals to review the decision of the Eliot Planning Board holding that the conveyances in question did not create an illegal subdivision.

■ Section 2411(3)(F) of 30 M.R.S.A., together with Art. 6.9(d)(4) of the Eliot "Zoning" Ordinance, provide for an appeal to the Superior Court from any decision by a Board of Appeals established under § 2411.[10] Hence, on the basis of the preceding discussion, we decide that applicable portions of 30 M.R.S.A. and of the Eliot "Zoning" Ordinance authorized the plaintiffs, as parties aggrieved by the decision of the Eliot Planning Board, to have direct judicial review by an "appeal" of that decision.

10. Section 2411(3)(F) provides:

"An appeal may be taken, within 30 days after the decision is rendered, by any party to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B. The hearing before the Superior Court shall be without a jury."

Having found the existence of a route of direct review available to plaintiffs, we turn to the question whether such direct review by appeal is adequate in the circumstances of this case.

██ This Court has enumerated expressly, and by example, circumstances we believe to justify departure from the doctrine that where an avenue to court is provided through a direct appeal in relation to pending administrative proceedings or determinations, that way into court is exclusive. Such deviation is permitted, for example, where the direct appeal is not broad enough in scope to allow judicial review of all the issues the aggrieved party seeks to have judicially considered, *see Lewiston, Greene and Monmouth Telephone Company v. New England Telephone and Telegraph Company*, Me., 299 A.2d 895, 904 (1973); or where claim is made that the ordinance under which the administrative agency purported to act was unconstitutional on its face, a contention which, if established, would render the administrative action beyond lawful authority, *Town of Windham v. LaPointe*, Me., 308 A.2d 286 (1973); or where the case involves a complex course of executive and legislative conduct by municipal officials as to which a remedy is impossible through an appeal to the Zoning Board of Appeals and subsequent direct judicial review, *Walsh v. City of Brewer*, Me., 315 A.2d 200 (1974).

██ The circumstances of the case before us neither call for applicability of the above described exceptions to the general rule as to the exclusivity of direct review procedures nor present us with an injustice necessitating articulation of an additional category of circumstances justifying deviation from the rule of exclusivity. Since plaintiffs in this case had followed the appropriate administrative procedures and obtained a final decision from the Board of Appeals, there is no question that an appeal to the Superior Court pursuant to 30 M.R.S.A. § 2411(3)(F) and Art. 6.9(d)(4) of the Eliot Zoning Ordinance would lie. Nor is there any question in this case of the Superior Court's ability, on direct appeal, to evaluate the question of law raised by plaintiffs. Finally, a decision on appeal that the conveyances in question did constitute the creation of an illegal subdivision would be functionally equivalent to the declaratory judgment and order of rescission sought by plaintiffs.

In this case, then, plaintiffs were confined to seeking a court determination by the route of direct appeal provided them by statute and ordinance. They had no other option. Because the action instituted by plaintiffs cannot be taken to be a *timely* resort to the route of direct appeal, plaintiffs purported access to the Superior Court was correctly held by that court to have failed.

The entry shall be:

Appeal denied; judgment of the Superior Court affirmed.

All concurring.