Edward T. KEATING et al.

v.

**ZONING BOARD OF APPEALS OF the CITY OF SACO et al.**

Supreme Judicial Court of Maine.

Sept. 24, 1974.

Drummond, Wescott & Woodsum, by John A. Graustein, Portland, for plaintiffs.

Smith, Elliott, Wood & Nelson, P. A., by Roger S. Elliott, Caron, Ayotte & Caron, by Ronald E. Ayotte, Sr., Saco, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On May 25, 1972 the Building Inspector of the City of Saco issued to the plaintiffs, Edward T. Keating and Harrison H. Sawyer, two building permits (Nos. 72–144 and 72–145). The permits authorized the construction of an 18-unit and a 6-unit "multi-family dwelling" on land of the plaintiffs bordering on Washington Avenue.[1]

---

1. At oral argument plaintiffs, Keating and Sawyer, moved, pursuant to Rule 25 M.R. C.P., that Bernard W. Gaines, Jr. of Saco, Maine, be made an additional party plaintiff.

The reason was that on June 28, 1973, after plaintiffs Keating and Sawyer had filed notice of an appeal to this Court, Keating conveyed to said Gaines, as a "joint tenant",

Subsequently, the Building Inspector issued to plaintiffs a "moving" permit (No. 72–302A) which allowed the transport along Saco streets of several pre-constructed building sections, so-called "shells", to be used in the construction authorized by the "building" permits. The "moving" permit was issued on August 7, 1972.[2]

On October 16, 1972, when construction of the foundations for the two structures had already been completed, a resident on Washington Avenue, defendant Donald Chretien, purported to take an "appeal" to the Saco Zoning Board of Appeals from the Building Inspector's issuance of the two building permits and the "moving" permit.[3]

After a public hearing the Zoning Board of Appeals, on November 8, 1972, revoked the two May 25, 1972 building permits and the "moving" permit issued on August 7, 1972. In its written opinion the Board acknowledged that the Saco Zoning Ordinance " . . . makes no provision as to the period of time in which an aggrieved party may appeal to this Board . . ." but concluded that "a reasonable time is implied." The Board then ruled that:

"The Appeal filed on October 16, 1972 was filed within such a reasonable time period."

Pursuant to Article VIII, Section 802–5 of the Saco Zoning Ordinance authorizing

"Appeals . . . from the decisions of the Appeal Board to the Superior Court according to the provisions of . . . Title 30 of the Maine Revised Statutes . . .",

and the provision in 30 M.R.S.A. § 2411–3–F that an appeal from a Zoning Board of Appeals is to be taken to the Superior Court

"within 30 days after the decision is rendered . . . in accordance with Rule 80B . . .",[4]

---

Keating's right, title and interest in the land here involved. Gaines consented to becoming an additional party plaintiff.

To reflect that Gaines had become a part owner with the plaintiffs Keating and Sawyer, we granted the motion to add Gaines as an additional plaintiff.

Accordingly, Bernard W. Gaines, Jr. of Saco, Maine, is a third plaintiff in this case along with Edward T. Keating and Harrison H. Sawyer who remain plaintiffs since they continue to have legal interests in the land.

2. In the written opinion accompanying the decision of the Superior Court Justice here under attack, the Justice stated that the "moving" permit (No. 72–302A) was issued on September 9, 1972. We have thoroughly scrutinized the record and find no support for this finding. The "moving" permit itself specifies that it was approved and issued on August 7, 1972. Throughout the hearings before the Zoning Board of Appeals and the Justice of the Superior Court the "moving" permit (No. 72–302A) was invariably referred to as issued on August 7, 1972. We conclude, therefore, that August 7, 1972 must be held controlling as the issuance date of the "moving" permit.

3. Article VIII of the Zoning Ordinance of the City of Saco deals with the "Zoning Board of Appeals." Section 802 confers jurisdiction upon the Zoning Board of Appeals "after public hearing . . . by a majority vote of its members", inter alia, to "[a]ffirm, modify or set aside the action of the Building Inspector in issuing or denying Building Permits or Certificates of Occupancy when it appears that action is based on an erroneous interpretation of the Ordinance."

Under Section 804 relating to "Appeal Procedure" the Ordinance provides in part: "A request by any aggrieved person or persons to the Appeal Board for a public hearing from any decision of the Building Inspector shall also be accompanied by a $15.00 fee payable to the City of Saco."

The Ordinance fails to specify any time limit within which "any aggrieved person or persons . . ." must make the "request . . . for a public hearing" thus to initiate an "appeal" to the Zoning Board of Appeals.

4. 30 M.R.S.A. § 4963–1 (effective March 15, 1972) provides in self-executing terms that: "A board of appeals is established in any municipality which adopts a zoning ordinance for the purpose of hearing appeals from actions or failure to act of the office charged with the enforcement of the zoning ordinance . . .", and further specifies that, with an exception not here relevant, "[s]uch board of appeals shall be governed by section 2411, . . . ."

plaintiffs, by an 80B complaint timely filed, appealed to the Superior Court (York County) from the action of the Saco Zoning Board of Appeals.

The complaint of plaintiffs alleged several errors by the Zoning Board of Appeals including a claim that the

"Board acted arbitrarily and capriciously in finding that the appeal [by Chretien] was brought within a reasonable time."

A full hearing was had in the Superior Court. Writing a comprehensive opinion, the Superior Court Justice concluded (under date of April 18, 1973) that he

"finds for the Defendants and that the decision of the Zoning Board of Appeals should not be over-turned on appeal and further Orders that Permits Numbers 72–302A, 72–144 and 72–145 should remain revoked."

Plaintiffs have appealed to this Court and assert, among many points of appeal, that the Justice of the Superior Court erred in upholding the Board's decision that Chretien's appeal to the Board had been timely filed.

We agree with this contention of plaintiffs and sustain their appeal on this ground without need to consider any of the other questions raised.

By 30 M.R.S.A. § 4963 (P.L.1972, Chap. 622, § 112, effective March 15, 1972) the adoption by the City of Saco of a Zoning Ordinance automatically "established" a "board of appeals" having the specific function

" . . . of hearing appeals from actions or failure to act of the office charged with the enforcement of the zoning ordinance."

Although Maine statute thus mandates the right of an "appeal" to the Saco Zoning Board of Appeals for the review of "actions or failure to act" of Saco's Building Inspector, the statute omits to prescribe a limitation period within which such "ap-

peal" must be initiated. In its implementation of the existence and functioning of the Saco Zoning Board of Appeals, the Saco Zoning Ordinance is silent as to a time within which "appeals" to the Zoning Board of Appeals must be taken.

■ It is generally agreed that when a statute or ordinance (or a rule having legal effectiveness) is thus silent concerning a period of limitation for the filing of an appeal to a Zoning Board of Appeals, a "reasonable" time is "impliedly" intended.

Ehrenberg v. Persons, 8 A.D.2d 18, 185 N.Y.S.2d 369 (1959) decided that, to avoid opening the door too wide to arbitrary and capricious action, a Zoning Board of Appeals must be denied power to decide, as a preliminary determination of fact in each individual case, whether an appeal has been taken in a "reasonable" time. Also: Maroney v. Friere, 343 N.Y.S.2d 183 (1973). We agree fully with this view.

Ehrenberg v. Persons, supra, goes further, however, to indicate—and Maroney v. Friere, supra, decides—that it lies within the authority of a "Court of competent jurisdiction" to make such case-by-case factual finding of "reasonableness."

We decline to follow this approach. We believe that to repose such discretion even in a judge—although it may reduce the dangers of arbitrary and capricious action to which a board constituted by lay persons may be more prone than a judge—is not tolerable because it injects subjectivity and lack of uniformity creating too great a potential for confusion and uncertainty.

As Ehrenberg v. Persons, supra, notes:

"The Board is given power, . . . to hear and decide appeals from any order, requirement, decision or determination made by an administrative official charged with the enforcement of the zoning ordinance. The beneficiary of action by such official is entitled to know when the order, decision or determination has become final and no longer

subject to review by the Board. Similarly, objectors to the grant of a permit by an administrative official are entitled to know within what time they must appeal. They should not be subjected to a preliminary fact finding . . . that the appeal has or has not been taken within a reasonable time." (185 N.Y.S. 2d p. 372)

Although in Ehrenberg v. Persons the last sentence of this quotation was addressed to preliminary fact-finding by the Zoning Board of Appeals rather than by a judge, we think that the needs for certainty and uniformity are not sufficiently fulfilled if authority is given to a judge, rather than a board of lay persons, to determine factually, case-by-case, whether each appeal to a Zoning Board of Appeals is taken within a "reasonable" time.

Our judgment is that the matter is better resolved if: (1) a fixed period is designated as the generally governing norm of the time "implied" as "reasonable" for the initiation of an appeal to a Board of Zoning Appeals, and (2) exceptions to this generally operative norm of "reasonableness" are permitted in those special situations in which a Court of competent jurisdiction finds special circumstances which would result in a flagrant miscarriage of justice unless, within a narrowly extended range, a time longer than the general norm is held "reasonable."

By thus rejecting the subjectivity and lack of uniformity inherent in allowing each individual judge to arrive at his own ad hoc conclusions of "reasonableness" and favoring the fundamental objectivity and uniformity achieved by promulgation of a generally operative standard of "reasonableness" subject to only infrequent and narrow exceptions, we believe that we achieve a highly desirable certainty and simultaneously permit the flexibility necessary to meet the incessant challenge to the general of the daily flow of the concrete—thereby to avoid the utter arbitrariness which, on occasion, can be shocking to conscience.

It remains, then, to fix the specific period which will be the norm of the "reasonable" time for the initiation of an appeal to a Board of Zoning Appeals "implied" when statute, ordinance (or rule) is silent on the subject.

As 2 F. McK. & W., Me.Civ.Pr. summarizes the general Maine experience: "the most common statutory appeal is thirty days, . . . " with a few "statutes permit[ing] review within 60 days . . . "; and as to the "most common" shorter thirty-day period,

" . . . in some instances the period begins to run from the decision rather than from notice of it; . . . ." (p. 315)

Rule 80B (b) M.R.C.P. establishes the shorter period of thirty days as the limitation time for invoking Superior Court "Review of Governmental Action" and prescribes that its commencement is the date of

"*notice* of any action or refusal to act of which review is sought . . . ." (emphasis supplied)

It would be difficult to transpose the 80B approach to the context of Zoning Board of Appeals review of a building inspector's functioning in zoning cases. Building inspectors give no official notice of their actions to the many persons who may be affected by them. If, therefore, a time limitation for appeals to a Zoning Board of Appeals is geared to the date of "notice" of the action (or failure to act) of a building inspector, the practical effect would be to require an official system to provide "notice" to the multitudes of persons conceivably "aggrieved" by decisions of building inspectors; otherwise, appeals would lie for an indefinite time into the future because of the fortuitous circumstances, not readily ascertainable in advance, which cause persons to be "aggrieved" by decisions of building inspectors. This could make the entire process unduly cumbersome and burdensome and, more seriously, sufficiently susceptible to

errors and omissions rendering it basically ineffectual.

On the other hand, precisely the difficulties involved in seeking to ensure that persons "aggrieved" by the decisions of building inspectors shall have reasonable opportunity to become informed that "appeal" action is necessary to protect their interests suggests problems in having the limitation period for an appeal commence from the date of the building inspector's activity subject to appeal. A building inspector usually does not hold hearings at which "interested" parties will be in attendance thus to be identified as "aggrieved." Absent an official system to provide "notice" of building inspector activity, and since, in usual course, little publicity attends the decisions of building inspectors, if the date of a building inspector's decision initiates the time for appeal to a Zoning Board of Appeals and especially if the duration of the period is short, there can be substantial danger that too many persons who eventuate as being "aggrieved" may learn too late that an appeal to the Zoning Board of Appeals should be taken to protect their interests.

An adequate (if not full) amelioration of the potential infirmities is accomplished, we believe, if we: (1) prescribe that the date of the action (or non-action) of the Building Inspector under attack initiates the running of the time within which an appeal must be taken and (2) fix the longer (even if less commonly utilized) period of 60 days as the length of time which shall be the generally governing norm of the "reasonable" period "implied" (when statute, ordinance or rule having the effect of law fails to designate a time) within which appeal must be taken to a Zoning Board of Appeals (or be held barred).[5]

Applying the foregoing principles to the instant situation, we find that Chretien's appeal to the Saco Zoning Board of Appeals was taken on October 16, 1972. This was later than 60 days after the Saco Building Inspector had issued, on May 25, 1972, the two building permits (Nos. 72–144 and 72–145) and, on August 7, 1972, the "moving" permit (No. 72–302A). Since the record shows that Chretien (1) knew not later than the end of June or early July, 1972, of the issuance of the two building permits, (2) was aware of the grading of the sites here involved and the construction of the foundations on them when such work commenced in June of 1972, and (3) thereafter continued to observe the entire progress of the work, no rational basis here exists for a finding that serious injustice results if Chretien is denied the benefit of an "implied" time for appeal longer than the 60 days adjudicated as the generally governing norm of "reasonableness."

Chretien's appeal to the Saco Zoning Board of Appeals is barred because taken too late. The Board was, therefore, without legal authority to entertain the appeal and to revoke the two building permits and the "moving" permit; and the Superior Court erred in upholding, rather than setting aside, the decision of the Saco Zoning Board of Appeals.

The entry is:

Appeal sustained.

The judgment of the Superior Court is reversed and set aside, and the cause is remanded to the Superior Court for entry of judgment in accordance with the opinion herein.

All Justices concurring.

---

5. We recognize that to require a person who wishes to build to wait 60, rather than 30, days before he may rely upon his building permit as "finally" issued tends to shorten further the utilizable "best" time for building already shorter in Maine than in other states having warmer climates. We think that any detriment thus created is outweighed by the need to ensure that the right of appeal given to persons "aggrieved" be realistic by embodying a time period for initiating the appeal sufficient in length to allow persons "aggrieved" a reasonable opportunity to know that their interests have been threatened and appeal is necessary to protect them.