STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-037
G A B  —YoR- 5/2/2011

MITAR K. KHALSA,

      Plaintiff

v.

ORDER

TOWN OF KENNEBUNK,
et al.,

      Defendants

Petitioner Mitar Khalsa appeals the Town of Kennebunk Zoning Board of Review's (ZBA) decision to affirm the issuance of building permits for three concrete slabs and equipment sheds. Ms. Khalsa asserts that the ZBA erred by not considering the validity of an earlier, unchallenged permit for a telecommunications flagpole tower when reviewing the applications for the equipment sheds. Following hearing, the appeal is Denied.

## BACKGROUND

The Village Marketplace is an existing commercial complex located in the Lower Village Business District in the Town of Kennebunk. (R. at 6.) A pre-existing, accessory use communications tower is mounted to one of Village Marketplace's buildings and rises approximately 60 feet above ground level. (R. at 6.) An antenna is affixed to this tower to provide a studio-transmitter link for the local radio station, which has its business and professional offices in the complex. (R. at 6.) The tower has been in continuous service since it was erected in 1991. (R. at 6.)

Prior to November 2009, The Village Marketplace, LLC, entered a lease agreement with respondent Navigator Properties, LLC (d/b/a Mariner Tower) to use a portion of the property to replace the pre-existing tower. (R. at 2, 6.) The replacement tower would be a stronger, alternative-design structure capable of accommodating the antenna for the radio station, antennas and equipment for the Town of Kennebunk's communication needs, and antennas for three FCC licensed wireless service providers. (R. at 6.) On November 5, 2009, Navigator Properties applied to the Town Code Enforcement Officer (CEO) for a building permit to replace and upgrade the existing tower with the new alternative tower not to exceed 125 feet in height. (*See* R. at 6–7; Kennebunk, Me. Zoning Ordinance, Art. 7, § 4(B)(7)–(C) (June 8, 2010).)

The Town CEO approved the application and issued Navigator Properties a building permit on November 30, 2009. (R. at 41.) The permit describes the project as: "Replace existing accessory use tower/telecommunications facility with the new flagpole tower and telecommunications facility." (R. at 41.) As directed by the Town Zoning Ordinance, the CEO mailed a notice of issuance to abutting property owners on December 3, 2009. (R. at 43, 109; Kennebunk, Me. Zoning Ordinance, Art. 4, § 2(C) (June 8, 2010).) The notices read:

> On 11/30/2009, Village Marketplace, owner(s) of property located at 169 Port Rd, ... received a permit to replace existing accessory use town/telecommunications [sic] facility w/flagpole towner [sic] and telecommunications facility. Our records show you own abutting property or own property across the street. Pursuant to Kennebunk Zoning Ordinance, Article 4, Section 2.C, you are being notified of the issuance of the above described permit.

(R. at 49.)

The CEO's decision to issue a tower building permit to Navigator Properties was never appealed. (R. at 98–99, 111, 159.) Construction of the tower began in late May of 2010. (R. at 110.) On June 17, 2010, three wireless service providers each applied for a

2

permit to construct an equipment shelter on a concrete pad accessory to the tower. (R. at 53, 56, 69–70, 84–85.) These carriers were the current respondents AT&T Mobility, Portland Cellular Partnership d/b/a Verizon Wireless, and T-Mobile Northeast LLC.[1] (R. at 53, 56, 69–70, 84–85.) The CEO issued all three permits on July 7, 2010. (R. at 66, 81, 93.)

On August 6, 2010, abutting property-owner Christopher Smith filed an administrative appeal of the CEO's July 7, 2010 action. (R. at 98–99, 100.) On the form he submitted to the ZBA, Mr. Smith described his appeal as follows:

> I would like to appeal the decision to grant a permit for the following reasons. At this time the tower is nonconforming and adding sheds to a nonconforming tower should not have been approved. The tower is nonconforming for the following reasons. . . .

(R. at 99.) Mr. Smith enumerated a number of objections to the tower, but did not list any objections to the equipment sheds themselves. (R. at 99.)

The ZBA heard Mr. Smith's appeal on September 20, 2010. (R. at 104.) After hearing from Mr. Smith and the CEO, and after taking public comments, a motion was made to "approve the Administrative Appeal of Christopher Smith of the decision of the [CEO] . . . regarding the approval of a permit to add a telecommunications tower and subsequent addition of two equipment sheds and one pad to the property . . . ." (R. at 119.) The ZBA voted 3 to 2 to find that the tower was "a new telecommunications facility," subject to the standards and application process of Zoning Ordinance Article 7, Section 4. (R. at 106.) The tower had not been approved pursuant to that process or met those standards, so it was non-conforming and "the appellant [had] a legitimate appeal." (R. at 106.)

---

[1]     T-Mobile's permit was actually issued to Omnipoint Communications, Inc. (R. at 84.)

AT&T, Verizon, T-Mobile, Navigator Properties, and the Kennebunk Board of Selectmen all wrote the ZBA to request that it reconsider its decision. (R. at 124, 126–27, 139, 142.) The ZBA met on October 13, 2010, to determine whether it should reconsider and if so, what action it should take. (R. at 150.) Following a hearing, the ZBA voted to reconsider its prior decision, and then voted unanimously to deny Mr. Smith's appeal. (R. at 161, 165–66.) In support of its decision the ZBA found:

> [T]he tower itself was constructed by a permit issued on 11/30/09. There was no appeal made within 30 days as required by ordinance. . . . [N]otice was adequate, therefore, the board finds it cannot consider the legality or non-conformity of the tower as part of this appeal.
>
> There was no evidence presented that the sheds/pads violated the ordinance and the CEO's decision to issue permits for the sheds/pads is in accordance with the ordinance.
>
> The board finds that the permits were properly issued for the sheds and pads.

(R. at 156.)

On October 28, 2010, Ms. Khalsa, appealed the ZBA's decision to this court pursuant to Rule 80B. Ms. Khalsa is not an abutting property owner, but she did speak during the public comment period at the ZBA's meeting of September 20, 2010.[2] (R. at 114–15.) On appeal, Ms. Khalsa argues that the ZBA had good cause to review Navigator Properties' tower permit.

## DISCUSSION

The Kennebunk Zoning Ordinance requires any "person aggrieved by a decision of the" CEO to "commence his appeal within thirty (30) days after" the CEO issues the final written decision. Kennebunk, Me. Zoning Ordinance, Art. 6, § 3(A) (June 8, 2010). A strong presumption of finality attaches to a CEO's decisions after the appeals period has run without a formal challenge. "Strict compliance with the appeal procedure of an

---

[2]     The respondents have not challenged Ms. Khalsa's standing to bring this action.

4

ordinance is necessary to ensure that once an individual obtains a building permit, he can rely on that permit with confidence that it will not be revoked after he has commenced construction." *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 6, 715 A.2d 162, 164–5.

The expiration of the thirty-day appeals period does not rectify an improper or illegal permit, but it does deprive the ZBA of its authority to hear an appeal and review the CEO's decision. *Id.* ¶ 7, 715 A.2d at 165. To paraphrase Justice Jackson, the permit becomes final not because it is lawful, but it is lawful only because it is final. *See Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring). Because the appeals period affects the ZBA's authority rather than the permit itself, the period will not be tolled simply because the CEO's decision is illegal or otherwise void *ab initio*. *Wright*, 1998 ME 184, ¶ 7, 715 A.2d at 165; *but see Brackett v. Town of Rangeley*, 2003 ME 109, ¶¶ 26–28, 831 A.2d 422, 430–31 (Alexander, J., concurring) (arguing that illegally issued permits should be subject to collateral attack, regardless of the appeals period).

Lack of notice alone is also insufficient to toll the period in which to appeal a CEO's written decision. *Wright*, 1998 ME 109, ¶ 7, 715 A.2d at 165; *Keating v. Zoning Bd. of Appeals of Saco*, 325 A.2d 521, 524–25 (Me. 1974). Indeed, the law presumes that no formal notice of a CEO's decisions will be provided. No statute requires a municipality to notify residents when a building permit is issued, and the Law Court has recognized that "an official system to provide 'notice' to the multitudes of persons conceivably 'aggrieved' by decisions" would be "unduly cumbersome and burdensome and . . . basically ineffectual." *Keating*, 325 A.2d at 524–25.

Where an ordinance is silent, the Law Court set 60 days from the decision as an appeals period of reasonable length, adequate to allow potentially aggrieved parties to inform themselves of the action and move to protect their interests. *Id.* The Town of

Kennebunk legislatively set a shorter period of 30 days from the date of decision, and also allowed the permit holder to wait six months before starting work on the ground. Kennebunk, Me. Zoning Ordinance, Art. 4, § 2(E); Art. 6, § 3(A) (June 8, 2010). Thus, the appeals period could run out before a potentially aggrieved neighbor was aware that a permit had issued. Kennebunk ameliorates this potential for injustice by requiring the CEO to notify abutting property owners when a building permit is issued, to keep a copy of the permit on file for public inspection, and by requiring the permit holder to post the permit prominently in public view during construction. Kennebunk, Me. Zoning Ordinance, Art. 4, § 2(C) (June 8, 2010).

Notwithstanding the need for finality, the Law Court has recognized that an appeals period may be extended "in those special situations in which a Court of competent jurisdiction finds special circumstances which would result in a flagrant miscarriage of justice unless, within a narrowly extended range, a time longer than the general norm is held 'reasonable.'" *Keating*, 325 A.2d at 524. This has alternately been referred to "as the 'flagrant miscarriage of justice' exception, . . . and the 'good cause exception.'" *Viles v. Town of Embden*, 2006 ME 107, ¶ 8, 905 A.2d 298, 301 (citing *Gagne v. Cianbro Corp.*, 431 A.2d 1313, 1317 (Me. 1981); *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 14, 831 A.2d 422, 427) (citation omitted).

"[A]pplication of the exception is a judicial, and not an administrative, decision." *Viles*, 2006 ME 107, ¶ 9, 905 A.2d at 301. In determining whether the exception applies, the court must start by "determining whether the appellant received notice of the issuance of the permit." *Id.* ¶ 13, 905 A.2d at 302. Assuming the appellant did not receive notice, the next key "factor is the amount of time the appellant waited to file the appeal after obtaining actual knowledge of the permit." *Id.* In the leading cases where the exception has been applied, the appellants could not have received notice because

6

they were residing out of state when the permit was issued, and they took legal action *immediately* upon becoming aware that construction had begun. *Id.* ¶ 14, 905 A.2d at 302; *Brackett*, 2003 ME 109, ¶ 1, 831 A.2d at 423–24; *see Gagne*, 431 A.2d at 1317 (appellant not out of state, but did initiate action immediately upon learning of permit).

Other relevant factors include "whether the municipality violated its own ordinance and whether the permit holder violated the terms of the permit." *Viles*, 2006 ME 107, ¶ 13, 905 A.2d at 302. Finally, there must be some extraordinary circumstance bearing on the equities, lest the exception grow into a de facto rule requiring permit holders to provide actual notice to the community. *See Gagne*, 431 A.2d at 1317 n.3 (denying creation of such a rule); *Keating*, 325 A.2d at 524 (exception should apply in "special situations" where "special circumstances" would make adherence to appeals period "result in a flagrant miscarriage of justice").

Ms. Khalsa's real challenge is to the validity of the permit issued to Navigator Properties on November 30, 2009. Before reaching that question, however, I must determine whether the ZBA had any authority to review the November 30 permit on Mr. Smith's appeal filed August 5, 2010. The record shows that Mr. Smith received actual notice of the November 30 permit from the Town on or around December 3, 2009. (R. at 49.) Notwithstanding a few typographical errors, the notice clearly indicated that a permit had been issued allowing Village Marketplace to replace the existing tower and telecommunications facility with a flagpole tower and telecommunications facility. (R. at 49.) There is no evidence that Mr. Smith or any other abutting resident made any effort to inquire about the details of the project, and no appeal was taken within the 30 days allowed by the ordinance.

Actual construction of the flagpole tower began in late May 2010, but the area residents took no formal action. There is no allegation or other indication that

construction of the tower was somehow hidden from public view. No objection to the project had been voiced when the wireless service providers applied for their building permits in June 2010, nor had opposition been raised when those permits were granted on July 9, 2010. Notice of the service providers' permits went out to Mr. Smith and the other abutters on or around July 9, 2010. (R. at 42.)

The first objection to any permit came when Mr. Smith filed his appeal on August 5, 2010. This was 27 days after the wireless service providers' permits had been issued, more than 60 days after construction of the new tower had commenced, and 248 days after the CEO had issued the permit for the flagpole tower. Ms. Khalsa did not voice her objection to the project until September 20, 2010, approximately four months after the start of construction.

There is no evidence that special circumstances deprived Mr. Smith or Ms. Khalsa of the opportunity to learn about the issuance of the tower permit or the scope of the project in November 2009, or at the start of construction in May 2010. Mr. Smith did receive notice of the permit in December 2009, but Ms. Khalsa argues that it did not adequately apprise Mr. Smith and other residents of the project's full scope. However, after both she and Mr. Smith were put on notice by the start of construction a few hundred feet from their residences in May 2010, Mr. Smith then waited more than 60 days to bring an appeal. Nor does Ms. Khalsa explain her own delayed action in the matter.

This is a case in which the original appellant had actual knowledge of the permit, but never challenged it. Mr. Smith instead waited for over half a year to file an appeal of a wholly different set of permits. Ms. Khalsa received actual notice no later than June 1, 2010. She never brought any action to the ZBA, and only objected as part of the hearing on Mr. Smith's appeal four months after becoming aware of the tower permit. Given

8

these unexplained delays, the court cannot say that extraordinary circumstances prevented a timely appeal of the tower permit.

No flagrant miscarriage of justice will result from holding Mr. Smith to the 30-day period provided by the ordinance, either from the time he received notice of the permit or the time he became aware of construction. Nor is it unjust to expect Ms. Khalsa to have taken some official action within 60 days of receiving actual notice by the start of construction. These delays were not caused by any irregularity or illegality on the part of the CEO. There is no indication that Navigator Properties violated its permit or built a structure different from what was originally approved.[3] Under the circumstances presented, there is no good cause to toll the appeals period and allow the ZBA to examine Navigator Properties' tower-building permit.

During Mr. Smith's appeal, the ZBA was limited to reviewing the CEO's July 7, 2010 decision to issue permits to the wireless service providers because the "flagrant miscarriage of justice" exception did not apply. At the first ZBA hearing on September 20, 2010, all of the evidence and testimony was directed at the propriety of the CEO's decision to issue a building permit to Navigator Properties for the flagpole tower. The question was framed as whether the CEO erred "regarding the approval of a permit to add a telecommunications tower and subsequent addition of two equipment sheds and one pad . . . ." (R. at 121.) The ZBA granted the appeal because it found that the tower was "a new telecommunications facility . . . and that would render the tower non-conforming and therefore the appellant has a legitimate appeal." (R. at 121.)

---

[3] In one incident, AT&T prematurely energized its equipment in the tower before the local radio station had brought its services online, violating the terms of Navigator Properties' permit. (R. at 111.) The CEO issued a Notice of Violation and the equipment was shut down. (R. at 111.) This violation did not impact the area residents' notice of the permit and construction, and is not a basis to toll the appeals period.

9

After granting the motion to reconsider, the ZBA found that no timely appeal had been taken from the November 30, 2009 decision to issue the tower permit, that notice of the decision had been adequate, and that the ZBA therefore could not "consider the legality or non-conformity of the tower as part of this appeal." (R. at 166.) The ZBA went on to find that "[t]here was no evidence presented that the sheds/pads violated the ordinance," and determined that "the CEO's decision to issue permits for the sheds/pads is in accordance with the ordinance." (R. at 166.)

On an 80B appeal, the court reviews the record before the ZBA "to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261. The ZBA correctly determined that it could not review the CEO's decision of November 30, 2009. The ZBA was also correct when it found no evidence indicating that the sheds and pads violate the ordinance. All of the evidence and argument at hearing concerned the flagpole tower, under the theory that the sheds could not be built if the tower was illegal. Because the ZBA could not consider the legality of the tower and since it was not presented with any evidence that the sheds and pads themselves were illegal, it correctly affirmed the CEO's decision.

## CONCLUSION

Appellant Mitar Khalsa's 80B appeal is Denied.

Dated:        May 2 , 2011

G. Arthur Brennan
Justice, Superior Court

List of Attorneys on the following page.

10

Attorney for Plaintiff Mitar Khalsa:
Patrick Venne, Esq.
Law Office of Patrick Venne
157 Wolcott Street
Portland, ME  04102

Attorney for Defendant Town of Kennebunkport:
Natalie Burns, Esq.
Jensen Baird, et al
P.O. Box 4510
Portland, ME 04112

Attorney for Party in Interest Verizon & T-Mobile
Scott Anderson, Esq.
Verrill Dana, LLP
P.O. Box 586
Portland, ME 04112-0586

Attorney for Party in Interest AT&T Mobility
Barry Hobbins, Esq.
Law Office of Barry Hobbins
74 Beach Street
Saco, ME 04072

Attorney for Party in Interest Navigator Properties
Durward Parkinson, Esq.
Bergen & Parkinson, LLP
62 Portland Road, Suite 25
Portland, ME 04043

Attorneys for Party in Interest T-Mobile Northeast
Brian S. Grossman, Esq.
Christopher A.D. Hunt, Esq.
Prince Lobel Glovsky & Tye, LLP
100 Cambridge Street, Suite 220
Boston, MA 02114